Dear Mr. Chastain:
You have requested an opinion from the Attorney General, in your capacity as special counsel to the Sabine River Authority (SRA), as to which, if any, state procurement laws apply to the procurement of professional services by the SRA. More specifically, you ask whether the procurement of professional engineering services to assist in the planning and development of a Capital Improvement Program Project (CIP) encompassing new recreational, leisure time, and entertainment projects in and around the Toledo Bend Reservoir, are subject to (1) LSA-R.S.38:2310 et seq., (2) LSA-R.S. 39:1482 et seq., (3) LSA-R.S.48:285 et seq., and/or (4) any other statutory procurement laws or regulations.
It is our understanding from the statement of facts presented in your letter that the SRA determined that it should develop new recreational, leisure time, and entertainment projects in and around the Toledo Bend Reservoir to enhance the area's economy and quality of life. More specifically, the SRA desires to develop a CIP which may include convention facilities, golf course, tennis courts, swimming beach, indoor/outdoor pool, marina, gourmet restaurant, lodging and other amenities, plus roads, utilities and other infrastructure. The magnitude of the CIP will depend upon the feasibility of the various segments thereof.
The SRA requires professional assistance with the planning and development of the CIP, and desires to enter into a contract with Meyer Associates, Inc. (Meyer), engineers and planners based in Sulphur, Louisiana, who have demonstrated vast experience in planning, feasibility studies and the design of various types of developments. The Board of Commissioners of the SRA authorized the execution of a contract for professional services between itself and Meyer at one of its regularly scheduled public meetings.
The proposed contract will obligate Meyer to provide project management/development services and conventional technical services for the CIP. Meyer has already rendered valuable services to the SRA in good faith in contemplation of the contract being executed, and under the belief that no procedural restrictions governed the confection of same. SRA negotiated the terms of the proposed contract with Meyer in good faith, also anticipating that it could execute same with no procedural restrictions. You seek our opinion confirming the inapplicability of the various laws and regulations relative to the procurement of these professional services.
Act 261 of the 1950 Regular Session of the Louisiana Legislature enacted LSA-R.S. 38:2321 et seq., thereby establishing the SRA. In 1960, an amendment to the Louisiana Constitution of 1921 adding Article XIV, Section 45 was adopted, ratifying and confirming the SRA. These provisions are now also statutory by virtue of Article XIV, Section 16(A) of the Louisiana Constitution of 1974. Pursuant to LSA-R.S. 36:509(O), the SRA was placed within the Department of Transportation and Development.
The SRA is clearly a state agency under both LSA-R.S. 38:2324
and Article XIV, Section 45. Thus, in the absence of an exemption in the statutes establishing the SRA or the various professional service procurement provisions, it is conceivable that the SRA would be subject to these latter provisions. For the following reasons, it is our opinion that the professional services agreement between SRA and Meyer is not subject to the aforementioned procurement laws.
LSA-R.S. 38:2325 provides, in pertinent part, with respect to the powers of SRA, the following:
"Said Authority shall have the power:
* * *
 (d) To let contracts for the construction or acquisition in any other manner of property and facilities incident to carrying out the corporate purposes of the Authority, which contract shall be let in such manner as shall be determined by the board of commissioners." (Emphasis added)
LSA-R.S. 38:2337 further provides, in part:
 "This Chapter shall be full, complete and independent authority for the performance of all acts herein authorized, and no other statute or legislative act shall be construed to be applicable to the carrying out of the powers herein granted unless herein expressly so made applicable . . . . This Chapter being intended to carry out a function of the state to protect the health and welfare of the inhabitants of the portion of the state to be affected hereby, shall be liberally construed by the courts to effect its purposes." (Emphasis added.)
Despite its transfer within the Executive Branch to the Department of Transportation and Development, LSA-R.S.36:801.1(D) provides that the SRA "shall continue to perform and administer its functions which are in the nature of accounting and budget control, procurement and contract management, management and program analysis, data processing, personnel management, and grants management." Section 801.1(E) further provides that the SRA "shall exercise the powers, duties, functions, and responsibilities as provided by the constitution and by law and shall administer and implement the programs authorized in this Section or any other provision of law independently of the secretary, the undersecretary, and any assistant secretary."
In Arnold v. Board of Levee Commissioners of the Orleans Levee District 366 So.2d 1321 (1978), our Supreme Court considered an issue similar to that presented herein, and reaffirmed the legal principle that a public entity may be exempt from the operation of general regulatory laws when that entity is granted broad and sweeping discretion and authority within its special statutes.
In Arnold, taxpayers brought suit to enjoin construction of a museum and library on property leased from a parish levee board by a private foundation. The appellate court reversed the trial court's sustaining of the defendant's exception of no cause of action, holding that the lease was invalid because it did not comply with the Public Lease Law (LSA-R.S. 41:1211 et seq.). After remand and affirmation by the Court of Appeal, writs were granted.
While the Court noted that the general provisions of the Public Lease Law included levee districts, specifically, by definition, it observed that the law special to the Orleans Levee Board granted the Board the power and authority to:
 ". . .sell and lease such portion of the lands reclaimed and other property . . . under such terms and conditions and by such methods as said Board may deem proper." (Emphasis added.)
In rejecting plaintiffs' arguments that the public policy of the state favors competitive bidding for the lease of state property, and the legislative intent as bodied in the latter enactment of the Public Lease Law requires that the differing provisions be reconciled in favor of public bidding, the Court opined:
 "From this review of the jurisprudence, it appears to us that the broad grant of authority to the Levee Board in disposing of property reclaimed from the lake bottom operates as an exemption to the general law requiring public bids before state lands can be leased. The phrase `under such terms and conditions and by such methods as said Board may deem proper . . .' indicates a plenary grant of authority to the Board to dispose of the property within the lake front area in any manner which it deems appropriate under the circumstances, which includes a negotiated lease. To hold otherwise is to engraft onto the special powers granted the Board a proviso that they be exercised in accordance with the provisions of any general statute dealing with related subject matter which the legislature might subsequently pass." (Emphasis added.)
While this office is cognizant and supports the public policy of this state favoring competitive bidding, we are of the opinion that the express and special statutory language contained in LSA-R.S. 38:2325, 2327, and 36:801.1(D) and (E), when read in pari materia, grants the SRA the plenary power to negotiate and execute the Meyer contract without compliance with the general laws relating to the procurement of professional services. In reaching this conclusion, we take note of the Arnold decision and the cases cited therein, all of which appear to rely on statutorily exempt language less express than the SRA's.
It should be noted that this opinion is limited in scope to the Meyer contract, only. Additional contracts must be examined on a case by case basis, taking into consideration the purpose of the contract(s) in relation to the specific statutory powers and authority of the SRA.
Trusting this to be of sufficient information, I am
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH, III:lbw-0009R
cc: Albert I. Donovan, Jr. Executive Counsel to the Governor